UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CROUCH,

                Plaintiff,

v.

DEBT MANAGEMENT PARTNERS, LLC,
VALMAR HOLDINGS, INC.,
ADAM DONALD MARCH and
DANIEL J. VALENTINE,

                Defendants.

_____/

COMPLAINT

## I.    Introduction

1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.*

2.      Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent, ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as

many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte,

North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The

Shake," that includes variations of the following:  The caller calls from a blocked number or uses

1

a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. Often times, the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.       The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

## II.    Jurisdiction

4.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

5.      Plaintiff Mark Crouch is an adult, natural person residing in Kent County, Michigan.  Mr. Crouch is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Crouch is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

6.      Defendant Debt Management Partners, LLC ("DMP") is an active Delaware limited liability company, with its principal office located at 200 John James Audubon Parkway,

Suite 102, Amherst, New York 14228.  The registered agent for DMP is United Corporate

Services, Inc., 874 Walker Road, Suite C, Dover, Delaware 19904.  DMP is managed by

defendants Adam Donald March and Daniel J. Valentine.  DMP is a wholly owned subsidiary of

Valmar Holdings, Inc., which is owned and managed by defendants Adam Donald March and

Daniel J. Valentine.  According to DMP's internet websites (www.dmpcollections.com and

www.dmpllc.biz), DMP "is an experienced purchaser of non-performing receivables, and one of

the largest buyers of payday loan and cash advance accounts in the country. . . . Our primary

network of outbound call center associates includes more than 700 dedicated professionals

nationwide."  DMP regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another.  DMP uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts.  DMP is a "debt collector" as

the term is defined and used in the FDCPA.  DMP is a "regulated person" as the term is defined

and used in the MRCPA.  Alternatively, DMP is a "collection agency" and "licensee" as the

terms are defined and used in MOC.

   7. During all times pertinent hereto, DMP directly and indirectly participated in the

unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described

in this complaint.

   8. DMP also has done well financially, with company cars that have included a 2006

Ferrari F430 Spider convertible, a 2010 Bentley Continental Super Sports Coupe, and multiple

Mercedes Benz vehicles.

   9. Defendant Valmar Holdings, Inc. ("Valmar") is an active New York corporation.

Defendant Debt Management Partners, LLC is wholly owned by Valmar.  Valmar is owned and

managed by defendants Adam Donald March and Daniel J. Valentine.  Presumably, the word

"Valmar" is a combination of the names Valentine and March.  Valmar regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Valmar uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Valmar is a "debt collector" as the term is defined and used in the FDCPA.  Valmar is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Valmar is a "collection agency" and "licensee" as the terms are defined and used in MOC.

10.     During all times pertinent hereto, Valmar directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

11.     Defendant Adam Donald March is a natural person, age 34, residing at 5145 Kraus Road, Clarence, New York 14031-1567.  Mr. March is a managing member of defendant Debt Management Partners, LLC and a manager of defendant Valmar Holdings, Inc.  According to Mr. March's page on the internet website, www.linkedin.com, "DMP has grown to one of the largest buyers of subprime consumer delinquencies in the country.  DMP supports hundreds of call center representatives nationwide . . . ."  Mr. March regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. March uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. March is a "debt collector" as the term is defined and/or used in the FDCPA.  Mr. March is a "regulated person" as the term is defined and used in the MCPA.  Mr. March is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

12.     During all times pertinent hereto, Mr. March (a) created the collection policies

5

and procedures used by DMP, Valmar, non-party Unified Global Group, LLC ("UGG"), and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of DMP, Valmar and UGG, (c) oversaw the application of the collection policies and procedures used by DMP, Valmar and UGG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by DMP, Valmar and UGG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by DMP, Valmar and UGG and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by DMP, Valmar and UGG and their employees and agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

13.     During all times pertinent hereto, Mr. March directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

14.     Defendant Daniel J. Valentine is a natural person, age 31, residing at 6545 Belle Way, East Amherst, New York 14051-2817.  Mr. Valentine is a managing member of defendant Debt Management Partners, LLC and a manager of defendant Valmar Holdings, Inc.  Mr. Valentine regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Valentine uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Valentine is a "debt

collector" as the term is defined and/or used in the FDCPA.  Mr. Valentine is a "regulated person" as the term is defined and used in the MCPA.  Mr. Valentine is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

15.     During all times pertinent hereto, Mr. Valentine (a) created the collection policies and procedures used by DMP, Valmar, UGG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of DMP, Valmar and UGG, (c) oversaw the application of the collection policies and procedures used by DMP, Valmar and UGG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by DMP, Valmar and UGG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by DMP, Valmar and UGG and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by DMP, Valmar and UGG and their employees and agents in attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

16.     During all times pertinent hereto, Mr. Valentine directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described in this complaint.

17.     On July 7, 2009, Mr. Valentine filed for Chapter 7 Bankruptcy in the United States District Court for the Western District of New York- Buffalo, Case No. 1-09-13123-CLB. Mr. Valentine's filed schedules listed total assets of $29,750.00 and total liabilities of

$606,061.30.  Mr. Valentine represented to the bankruptcy court that his average monthly income was $1,941.36 and that he was employed as a "Collection Manager" by Marval and Associates, LLC, 200 John James Audubon Parkway, Suite 304, Amherst, New York 14228.  Presumably, the word "Marval" is a combination of the names March and Valentine.  Mr. Valentine received his bankruptcy discharge in October of 2009.  Mr. Valentine has recovered nicely from his financial troubles.  On May 30, 2013, Mr. Valentine purchased his current residence at a sale price of $1,430,000.00.

18.      Non-party Unified Global Group, LLC is an active New York limited liability company that has held itself out as doing business at 401 Creekside Drive, Amherst, New York 14228.  UGG also has used the mailing address of P.O. Box 696, East Amherst, New York 14051. UGG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  UGG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  UGG is a "debt collector" as the term is defined and used in the FDCPA.  UGG is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, UGG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

19.      UGG maintains an internet website at www.unifiedglobalgroup.com.  The website was registered on March 19, 2014 by non-party Domenico D'Angelo, 200 John James Audubon Parkway, Suite 102, Amherst, New York 14068, with an email address of dom.dangeo@dmpllc.biz, which links to a website owned and maintained by DMP.

20.      During all times pertinent hereto, UGG directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch that are described

in this complaint.

21.     Non-party Domenico A. D'Angelo, Jr., also known as Dominick D'Angelo, is a natural person, age 29, purportedly residing at 39 Foxhunt Lane, East Amherst, New York 14051-1832.  Mr. D'Angelo is a managing member of UGG.  Mr. D'Angelo regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. D'Angelo uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. D'Angelo is a "debt collector" as the term is defined and/or used in the FDCPA.  Mr. D'Angelo is a "regulated person" as the term is defined and used in the MCPA.  Mr. D'Angelo is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.     During all times pertinent hereto, Mr. D'Angelo (a) created the collection policies and procedures used by DMP, Valmar, UGG and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of UGG, (c) oversaw the application of the collection policies and procedures used by DMP, Valmar, UGG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by DMP, Valmar and UGG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Crouch as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by DMP, Valmar and UGG and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by DMP, Valmar and UGG and their employees and agents in

attempts to collect an alleged debt from Mr. Crouch as alleged in this complaint.

23.     During all times pertinent hereto, Mr. D'Angelo directly and indirectly

participated in the unlawful debt collection practices to collect an alleged debt from Mr. Crouch

that are described in this complaint.

24.     DMP, Valmar, Mr. March, Mr. Valentine, Mr. D'Angelo, and others to be

identified in discovery, have used a series of entities that they have owned and/or controlled to

collect money allegedly owed by consumers from allegedly unpaid payday loans related to

accounts allegedly owned by DMP.  From at least the spring of 2010 through late 2013,

defendants' enterprise operated as Audubon Financial Bureau LLC, a Delaware limited liability

company.  From late 2013 through fall 2014, defendants' enterprise operated as ARM WNY,

LLC, a New York limited liability company.  From fall 2014 to the present, defendants'

enterprise operated as Unified Global Group, LLC.

25.     On November 4, 2013, the United States Department of Labor filed in the United

States District Court for the Western District of New York - Buffalo, Case No. 1:13-cv-01094-

WMS, a complaint against Debt Management Partners, LLC, Audubon Financial Bureau, LLC,

Daniel J. Valentine, Adam D. March and Domenico D'Angelo, alleging unfair labor practices.

On January 21, 2014, an Amended Consent Judgment was filed in the lawsuit, on behalf of

"**Debt Management Partners, LLC sole owner of Audubon Financial Bureau, LLC**" and

signed by Mr. Valentine and Mr. March, individually and as members of DMP, and by Mr.

D'Angelo, individually and as CEO of Audubon Financial Bureau, LLC.

26.     On May 11, 2015, the Federal Trade Commission filed in United States District

Court for the Western District of New York - Buffalo, Case No. 15-cv-422, a Complaint for

10

Permanent Injunction and Other Equitable Relief, against Unified Global Group, LLC, ARM WNY, LLC, Audubon Financial Bureau LLC, Domenico D'Angelo and Anthony Coppola, alleging in part: "Since at least March 2010, and continuing thereafter, Defendants have used deception and threats to extract money from consumers for purported debts.  Using telephone calls, text messages to mobile phones, and electronic and United States mail, Defendants have repeatedly: (1) falsely threatened consumers with dire consequences, including arrest, if consumers fail to make the payments that Defendants demand; (2) unlawfully contacted consumers' family members, employers, and other third parties; (3) charged consumers impermissible fees; and (4) denied consumers statutorily-required information about themselves and the consumers' purported debts, including information necessary for the consumers to confirm or dispute the debts. . . .  Defendants' combination of aggressive misrepresentations, unlawful third-party communications, and failure to comply with basic disclosure requirements has elicited millions of dollars of consumer payments. . . .  Defendants have claimed routinely that the consequences they describe – lawsuits, wage garnishment, criminal charges, or arrest – are imminent or under way, and that the consumer's only option for averting personal catastrophe is to submit payment."  According to the FTC, "Defendants' collection operations have been lucrative.  Since January 2012, deposits to the Corporate Defendants' accounts have totaled nearly $25.8 million."

27.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

28.     DMP, Valmar, Mr. March and Mr. Valentine, themselves debt collectors, are

liable for the unlawful collection activities carried out by debt collectors UGG and Mr. D'Angelo and their employees and agents to collect the alleged debt from Mr. Crouch as described in this complaint.

29.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

30.     On or about September 8, 2012, plaintiff Mark Crouch borrowed $300.00 via the internet from an entity named DJR Group, LLC ("DJR") (also known as Hydra Fund, also known as Hydra Financial), which assigned to the transaction an account number of 245470868.  Mr. Crouch borrowed and used the money for personal, family and household purposes.  Mr. Crouch borrowed the money in what is commonly called a "payday loan," at an annual interest rate that exceeded 300 percent.

31. Mr. Crouch allegedly failed to repay the debt.

32. DJR charged off and sold the delinquent account and related, alleged debt.

33. Defendant Debt Management Partners, LLC acquired the account and related, alleged debt.

34. DMP placed the account for collection with Unified Global Group, LLC.

35. Beginning in early 2015, Mr. Crouch received on his cellular telephones a series of calls demanding payment of the alleged debt.

36. On February 17, 2015, Mr. Crouch placed a call to DMP at telephone number 800-883-9067 and spoke to a DMP employee regarding his allegedly unpaid DJR payday loan account. In the ensuing conversation, the DMP employee stated that the account had been placed with UGG for collection and instructed Mr. Crouch to contact UGG at telephone number 855-977-2161.

37. On February 18, 2015, Mr. Crouch placed a call to UGG at 855-977-2161 and spoke with a UGG employee named Mr. Gates. In the ensuing conversation, the UGG employee stated that Mr. Crouch's DJR account, No. 245470868, was owned by DMP, was placed with UGG for collection, and that Mr. Crouch owed $510.00. Mr. Crouch stated that he would need to check his records to determine whether the debt had been paid.

38. On March 3, 2015, a UGG employee named Taylor Gates placed a call to Mr. Crouch from telephone number 716-253-6481 and left a message for Mr. Crouch to return his call to 855-977-2191, extension number 115.

39. On March 3, 2015, Mr. Crouch placed a call to telephone number 855-977-2191 and spoke with an UGG employee named Mr. Gates. In the ensuing conversation, the UGG

employee stated that Mr. Crouch's DJR account, No. 245470868, was owned by DMP, that DMP had placed the account with UGG for collection, and that Mr. Crouch owed $510.00.  Mr. Crouch stated that he believed that the account had been paid.  Mr. Crouch stated that he refused to pay any money to UGG or DMP.  Mr. Crouch demanded that UGG stop calling his cellular telephones.

40.     UGG continued to place telephone calls to Mr. Crouch's cellular telephone in efforts to collect the alleged debt.  A partial list of those calls is as follows:

a)      April 9, 2015 (two calls)

b)      April 13, 2015

c)      April 14, 2015 (three calls)

d)      April 16, 2015

e)      April 17, 2015 (two calls)

f)      April 21, 2015 (two calls)

g)      May 4, 2015 (two calls)

h)      May 5, 2015 (two calls)

41.     In April and May of 2015, Mr. Crouch had telephone conversations with UGG employees named Mr. Barnes, Mr. Gates, Mr. Joseph and "Nick."  In the course of those conversations, the UGG employees, multiple times, falsely represented and falsely implied to Mr. Crouch that (a) litigation had been (or was about to be) filed against Mr. Crouch in Kent County, Michigan, (b) Mr. Crouch's wages were about to be garnished, (c) a lien was about to be placed against Mr. Crouch's property, and (d) criminal charges were being filed against Mr. Crouch, unless Mr. Crouch paid money to UGG.

42.     On May 5, 2015, Mr. Crouch spoke by telephone with an UGG employee named Mr. Barnes.  In the ensuing conversation, Mr. Barnes made the following false representations to Mr. Crouch:

a)      "We have received documentation forwarded over to our office stating a refusal to pay your DJR payday loan in the amount of $510.00 and at this time you are being pursued legally in Kent County for them to receive those funds back."

b)      "I'm with Unified Global.  So your account was forwarded over to our office, basically as a final attempt to contact you about this voluntarily before this matter does get pursued legally in court."

c)      "They were looking to pursue it legally, so it's been forwarded over to us as a final attempt to contact you to resolve it.  They weren't going to contact you no more sir because they were going to go ahead and pursue the matter legally in Kent County."

d)      "Hydra Financial is suing you because you took the funds from them and didn't pay back."

e)      "It's in our office as a final attempt to resolve this voluntarily before it goes to court."

f)      "All's we are doing is contacting you to see if this is something you could potentially resolve before Hydra Financial sues you to receive their funds back."

43.     The above-described threats and representations made by defendants' employees

and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.  Discovery is expected to disclose that defendants and their agents and employees have coerced the payment of millions of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

44.     Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and the their companies.

45.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that they represented the original creditor of the account.

46.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that they had the legal right to collect the account.

47.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that there were legal claims pending against Mr. Crouch.

48.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that criminal charges were pending against Mr. Crouch.

49.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that a lawsuit had been filed against Mr.

16

Crouch to collect the alleged debt.

50.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that a lawsuit would be filed against Mr. Crouch to collect the alleged debt.

51.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that the original creditor would be filing a lawsuit against Mr. Crouch to collect the alleged debt.

52.     Defendants and their employees and agents in the described communications falsely represented to Mr. Crouch the amount of the alleged debt.

53.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that defendants retain lawyers to collect the debts.

54.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that defendants intended to retain lawyers to collect the alleged debt from Mr. Crouch.

55.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that lawyers were involved in defendants' efforts to collect the alleged debt from Mr. Crouch.

56.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that Mr. Crouch had committed a crime.

57.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that Mr. Crouch was going to be arrested

and prosecuted for having committed a crime.

58.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Crouch that Mr. Crouch was going to be served with a summons and complaint.

59.     Defendants did not intend to file a lawsuit against Mr. Crouch in any Michigan court in efforts to collect the alleged debt.

60.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

61.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

62.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

63.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

64.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

65.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

66.     The FDCPA states that it is unlawful for a debt collector to make any false

representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

67.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

68.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

69.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

70.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

71.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

72.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer.  15 U.S.C. § 1692e(7).

73.     The FDCPA states that it is unlawful for a debt collector to communicate to any

person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

74.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

75.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

76.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

77.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

78.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

79.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

80.     Defendants and their employees and/or agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

81.     Defendants and their employees and/or agents falsely accused Mr. Crouch of

20

committing a crime.  Mr. Crouch did not commit a crime under Michigan law because the

Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in

Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any

criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

82.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall,

either orally or by a written or printed communication, maliciously threaten to accuse

another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made.  *People v. Maranian*, 359 Mich. 361 (1960).

83.     Defendants and their employees and/or agents failed to timely send to Mr. Crouch

a notice containing the information required by 15 U.S.C. § 1692g(a).

84.     Each defendant and each defendant's employees, managers, owners, agents,

attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of

the unlawful debt collection practices that are described in this complaint.

85.     Defendants and their employees, managers, owners, agents, attorneys, affiliates

and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and

MOC.

86.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

21

refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

87.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

88.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

89.     Plaintiff incorporates the foregoing paragraphs by reference.

90.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted

collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

91.     Plaintiff incorporates the foregoing paragraphs by reference.

92.     Each defendant has violated the MRCPA. Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the

23

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e) Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e) Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

93. Plaintiff incorporates the foregoing paragraphs by reference.

94. Each defendant has violated the MOC. Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

24

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor

without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: May 29, 2015

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com